IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ARMANDO SOLORZANO VELEZ,<br><br>Petitioner,<br><br>vs.<br><br>PAMELA BONDI, Attorney General, KRISTI NOEM, Secretary, U.S. Department of Homeland Security, TODD M. LYONS, Acting Director of Immigration and Customs Enforcement, DAVID EASTERWOOD, Acting Director, St. Paul Field Office Immigration and Customs Enforcement, and ERIC TOLLEFSON, Sheriff of Kandiyohi County,<br><br>Respondents. | **0:26-cv-01500-SHL-DJF**<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S VERIFIED PETITION FOR WRIT OF HABEAS CORPUS** |

## I.     INTRODUCTION.

Petitioner Armando Solorzano Velez seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs Enforcement ("ICE") officials. (ECF 1.) Respondents resist. (ECF 5.) For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART his Verified Petition for Writ of Habeas Corpus. (ECF 1.)

## II.     BACKGROUND.

Petitioner is a citizen of Mexico who has been in the United States since October 5, 2022. (ECF 1, ¶ 13.) Petitioner claims that he entered the United States "in Reynosa, Texas" and turned himself into border patrol. (Id., ¶ 14.) Respondents submit a Declaration which attests that Petitioner entered the United States at the Gateway International Bridge in Brownsville, Texas where he presented himself to border patrol. (ECF 6, ¶ 5.) Regardless, Petitioner was issued a Notice to Appear the same day that charged him with removability under Section 212(A)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (Id., ¶ 6.) Petitioner was also granted parole for one year. (ECF 1, ¶ 14; ECF 6, ¶ 7.)

Petitioner later had two hearings in front of immigration judges, neither of which resulted in a final order of removal. (ECF 1, ¶ 15; ECF 5-1; ECF 5, p. 3.) Following a hearing in October 2024, an immigration judge did, however, sustain the charge of removability and designate Mexico as country of removal. (ECF 5-1; ECF 5, p. 3.) Petitioner was placed "in a queue for a final

1

hearing." (ECF 5, p. 3.) He was characterized as "not detained" following his immigration court proceedings. (ECF 5-1, pp. 1, 5.) He has a valid work permit and works as a janitor for Dakota County, Minnesota. (ECF 1, ¶ 16.)

On February 15, 2026, Petitioner was arrested by the Bloomington Police Department for Domestic Assault. (ECF 6, ¶ 8.) Respondents were notified of Petitioner's arrest and lodged an immigration detainer. (ECF 6, ¶ 9; ECF 6-1.) Petitioner was transferred to ICE custody that day but was not presented with an arrest warrant from ICE at that time. (ECF 1, ¶ 19.) Respondents did, however, serve Petitioner with a warrant two days later, on February 17, 2026. (ECF 6, ¶ 10; ECF 6-2.) The warrant states that there is probable cause to believe Petitioner "either lacks immigration status or notwithstanding such status is removable under U.S. immigration law . . . ." (ECF 6-2.) According to the warrant, the probable cause determination is based on "biometric confirmation of the subject's identity and a records check of federal databases" and/or "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence." (Id.) Petitioner was detained at the Kaniyohi County Jail in Willmar, Minnesota. (ECF 7.)

## III.    HABEAS CORPUS STANDARD.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs.*, No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

## IV.    LEGAL ANALYSIS.

Respondents argue that this case is on different legal footing than most of the habeas petitions federal courts have seen in recent months. There is, however, some overlap with those cases in the sense that one of the threshold disputes is whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) or whether detention might be discretionary under 8 U.S.C § 1226. What makes this case somewhat unique, however, is that Respondents argue that Petitioner is governed by § 1225(b)(1), not § 1225(b)(2) as they have argued in most other cases. In addition,

Respondents argue that even if Petitioner is governed by § 1226, he is nonetheless subject to mandatory detention under § 1226(c) based on his recent arrest for domestic assault. The Court addresses each of these arguments in turn.

8 U.S.C. § 1225(b)(1) governs "an alien . . . who is arriving in the United States" and creates expedited proceedings for certain inadmissible individuals. "Section 1225(b)(1) applies to those initially determined inadmissible for fraud, misrepresentation, or lack of valid documentation, and authorizes expedited removal absent an asylum claim." *Eliseo A.A. v. Olson*, --- F. Supp. 3d ----, 2025 WL 2886729, at *2 (D. Minn. Oct. 8, 2025) (citing 8 U.S.C. §1225(b)(1)(A)(i)–(ii). The Supreme Court has outlined in detail the basic procedures of § 1225(b)(1):

> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum . . . or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii).

*Jennings v. Rodriguez*, 583 U.S. 281, 287–88 (2018).

"As the statute and binding precedent make clear, aliens subject to expedited removal under 8 U.S.C. § 1225(b)(1) are also subject to mandatory detention throughout their removal proceedings, and are generally not entitled to release unless the Government chooses to parole them." *Cartagena Hueso v. Soto*, No. 26-1455, 2026 WL 539271, at *2 (D.N.J. Feb. 26, 2026); *Jennings*, 583 U.S. at 300 ("[T]he Attorney General may 'for urgent humanitarian reasons or significant public benefit' temporarily parole aliens detained under §§ 1225(b)(1) and (b)(2)." (citing 8 U.S.C. § 1182(d)(5)(A)). Once paroled, "even a noncitizen applicant for admission who falls into the category of those that 'shall' be detained may be permitted to cross into the United States and live in the country with relative freedom pending further immigration proceedings." *Qasemi v. Francis*, No. 25-CV-10029, 2025 WL 3654098, at *4 (S.D.N.Y. Dec. 17, 2025). Parole can be terminated either automatically or on notice to the individual. 8 C.F.R. § 212.5(e). Parole automatically ends either when the individual departs from the United States or "at the expiration of the time for which parole was authorized." *Id.* § 212.5(e)(1). Alternatively, parole may be terminated when, *inter alia*, "neither humanitarian reasons nor public benefit warrant continued

presence of the alien in the United States." *Id.* 212.5(e)(2). In such cases, parole is terminated with "written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id.*

The Court cannot tell from the current record whether Petitioner remains (or ever was) subject to § 1225(b)(1). Both sides agree that Petitioner: (a) turned himself into immigration authorities at or near the United States-Mexico border in 2022; (b) lacked proper paperwork for entry into the United States; (c) was charged with removability under § 212(a)(7)(A)(i)(I); and (d) was paroled. In these circumstances, it appears that Petitioner *might have* been placed in expedited removal proceedings under § 1225(b)(1). The documents in the record do not, however, establish this. For that reason, and because the Court's recent experience has generally involved immigration officials choosing to treat people in Petitioner's position as aliens "present in the United States" subject to discretionary parole § 1226, the Court cannot conclude that Petitioner is governed by the mandatory detention provisions of § 1225(b)(1).

The Court similarly cannot conclude that Respondents have the unilateral authority to start treating Petitioner as being governed by § 1225(b) even they did not do so previously. *See Helbrum v. Williams Olson,* 4:25-cv-00349-SHL-SBJ, 2025, WL 2840273, at *4 (S.D. Iowa Sept. 30, 2025) ("At that time, he arguably could have been treated as an 'applicant for admission' subject to mandatory detention under § 1225(b)(2)(A). But that is not how federal officials chose to proceed. Instead, they released Petitioner '[i]n accordance with Section 236 of the Immigration and Nationality Act' (i.e., 8 U.S.C. § 1226) and on his 'own recognizance.'"); *See Martinez v. Hyde*, 792 F. Supp. 3d 211, 218–23 (D. Mass. 2025) (similar). Instead, the Court will presume that Petitioner is governed by § 1226 and §1229a as an "alien[] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.

Even so, Petitioner is not entitled to immediate release. In past § 1226 cases, the Court has ordered immediate release when, *inter alia*, there has been no change in the person's circumstances that would warrant revocation of parole. By contrast, the Court has not ordered immediate release when there has been a new development such as (i) immigration officials initiating a removal proceeding where no proceeding previously existed, or (ii) the alien being arrested on new charges or otherwise allegedly violating the terms of release. Here, Petitioner has been arrested on new charges related to an alleged Domestic Assault incident. (ECF 6, ¶ 8.) It is appropriate to allow an Immigration Judge to decide whether this new arrest (a) subjects him to mandatory detention

pursuant to § 1226(c), or (b) warrants reconsideration of the prior decision to allow Petitioner to be released on parole.

Granted, Petitioner has raised a legitimate argument about whether Respondents needed an arrest warrant to take him into custody, as opposed to merely lodging a detainer. There is ambiguity in governing statutes and regulations on this point. Section 1226(a) requires a "warrant issued by the Attorney General" before an alien may be arrested and detained, whereas § 1226(c) makes no reference to a warrant when it says the "Attorney General shall take into custody any alien who…(ii) is charged with [a qualifying offense]." Relatedly, 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.3(a) permit warrantless arrest in some circumstances, provided that a warrant is obtained within forty-eight hours, as happened here. Given the incomplete and ambiguous nature of the record, the Court will not order immediate release, but rather will allow an Immigration Judge to address the following three questions: first, whether Petitioner is subject to mandatory detention under § 1225(b)(1) by virtue of having been placed in expedited removal proceedings when he first entered the country; second, if not, whether he is subject to mandatory detention under § 1226(c); and third, if not, whether bond or detention is appropriate under § 1226(a) after taking into account all relevant factors.

## V.    CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Verified Petition for Writ of Habeas Corpus (ECF 1) is GRANTED IN PART and DENIED IN PART. Within seven days, Respondents must provide Petitioner with an individualized hearing before an Immigration Judge to address the three issues identified above. The Immigration Judge must decide those issues on the merits and may not conclude that it lacks jurisdiction to order bond.

2. Within fourteen days, one or both Parties must file a notice confirm that Petitioner has been granted the individualized hearing required by this Order. The notice also should state the outcome of the hearing.

**IT IS SO ORDERED.**

Dated: March 9, 2026

_____
Stephen H. Locher
UNITED STATES DISTRICT JUDGE

5